IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JUNIOR WALTON,** | : | CIVIL NO. 1:CV-09-00936 |
| **Petitioner** | : | (Judge Rambo) |
| v. | : | |
| **MARY SABOL,** *et al.*, | : | |
| **Respondents** | : | |

## **M E M O R A N D U M**

Petitioner Junior Walton ("Walton"), presently a detainee of the United States Immigration and Customs Enforcement ("ICE"), incarcerated at the York County Prison in York, Pennsylvania, filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 on May 19, 2009. (Doc. 1.) Walton is challenging his continued detention pending his removal proceedings. For the reasons that follow, the petition will be denied.

## **I.    Background**

On January 7, 1989, Walton, a native and citizen of Barbados, entered the United States as a B2 visitor with authorization to remain in the country for a temporary period. (Doc. 8-2, Ex. 2, Record of Deportable/Inadmissible Alien, 7.) Walton adjusted his status on February 13, 1989 in Philadelphia, Pennsylvania to a

CR6 Conditional Permanent Resident. (*Id.*) However, he failed to file the required joint petition with his spouse requesting the removal of the conditional status of his residence within the ninety days allowed after the second anniversary of the date his conditional residence was granted. (*Id.*) As a result, Walton's permanent resident status was terminated on February 14, 1991. (*Id.*)

On July 8, 1993, Walton was arrested in Philadelphia and charged with burglary, criminal trespass, and criminal conspiracy. (*Id.* at 8.) He was placed on accelerated rehabilitative disposition ("ARD") on the criminal trespass charge for one year, while the other charges were dismissed. (*Id.*)

On December 1, 2004, Walton was arrested in Philadelphia and charged with stalking and contempt for violation of a court order. (*Id.* at 9.) In November 2006, he was found guilty and sentenced to twelve months probation. (*Id.*)

On August 26, 2008, Walton was arrested in Philadelphia and charged with possessing an instrument of crime, recklessly endangering another person, and terroristic threats. (*Id.* at 9.) As of the date of this writing, these criminal charges are still pending. (Doc. 6 at 3 n.1.)

On August 27, 2008, the Department of Homeland Security ("DHS") charged Walton under section 237(a)(1)(D)(i) of the Immigration and Nationality Act

("INA"), 8 U.S.C. § 1227(a)(1)(D)(i), as amended, informing him that he was subject to removal because his conditional permanent resident status had terminated because of his failure to file a petition to remove that status. (Doc. 8-2, Ex. 1, Notice to Appear, 3-5.) Walton was placed into ICE custody on August 28, 2008. (*Id*.)

On September 15, 2008, Walton requested a bond redetermination. (Doc. 8-2, Ex. 5, Memorandum to Office of Immigration Judge, 14.) On September 23, 2008, Walton was notified that a hearing on his removal proceedings had been rescheduled. (Doc. 8-2, Ex. 7, Notice of Hearing in Removal Proceedings, 16.) On October 6, 2008, DHS lodged the following additional charges against Walton:

> Section 237(a)(2)(E)(i) of the [INA], as amended, in that you are an alien who at any time after admission is convicted of a crime of domestic violence, a crime of stalking, or a crime of child abuse, child neglect, or child abandonment.
>
> Section 237(a)(2)(E)(ii) of the [INA], as amended, in that you are an alien who at any time after entry has been enjoined under a protection order and has been determined to have engaged in conduct in violation of that order that involves protection against credible threats of violence, repeated harassment, or bodily injury to the person or persons for whom the protection order was issued.

(Doc. 8-2, Ex. 6, Additional Charges of Inadmissibility/Deportability, 15.) In support of these charges, the following allegations were made:

> On November 28, 2006, you were convicted in the Municipal Court of Philadelphia County, under Docket Number 1147101-2004, of Contempt

> for Violation of an Order or Agreement in violation of 23 Pa. C.S.A. § 6114(a) of the Pennsylvania Crimes Code.
>
> On November 28, 2006, you were convicted in the Municipal Court of Philadelphia County, under Docket Number 1147101-2004 of Stalking in violation of 18 Pa. C.S.A. § 2709.1(a)(1) of the Pennsylvania Crimes Code.

(*Id.*)

On November 25, 2008, Walton requested release on bond from ICE custody. (Doc. 8-2, Ex. 4, Decision and Order dated March 11, 2009, 12-13.) On January 7, 2009, an immigration judge ("IJ") issued a memorandum finding that Walton should continue to be detained in the custody of ICE without bond because he presents a threat to the community and a significant flight risk. (Doc. 8-2, Ex. 8, Bond Redetermination Memorandum, 17-19.) Walton appealed that decision to the Board of Immigration Appeals ("BIA"). (Doc. 8-2, Ex. 9, Decision of BIA on Appeal of Bond Proceedings, 20.) On February 20, 2009, the BIA issued a decision remanding the record for further proceedings because the IJ's decision was not accompanied by a written decision or a bond memorandum containing analysis to support the denial of Walton's change in custody request. (*Id.*)

On remand, the IJ issued a decision and order on March 11, 2009, again denying Walton's request to be released from ICE custody. (Doc. 8-2 at 12-13.) The

4

IJ noted that in November 2006 Walton had been convicted in Philadelphia of criminal contempt relating to a violation of a protection order with respect to stalking. (*Id*. at 12.) The IJ also noted that a bench warrant was issued against Walton when he failed to appear for a hearing on that charge. (*Id*.) He was later returned on that warrant and sentenced to twelve months probation. (*Id*.) The IJ also noted that Walton was under pending criminal charges in Philadelphia for terroristic threats and criminal possession of an instrument of a crime. (*Id*.)

Further, the IJ stated, "[w]hile the government had not argued that [Walton] was subject to mandatory custody, ICE counsel argued that [Walton] posed a risk of danger to his community foremost, and a flight risk secondarily." (*Id*. at 12-13.) The IJ agreed with ICE counsel, stating,

> [Walton] has four (4) arrests in the United States, including one for refusing to abide by a protection from abuse order issued by a court of law due to stalking the victim. He failed to appear at his hearing for that violation and the trial court was forced to issue a bench warrant.

(*Id*. at 13.) As a result, the IJ denied Walton's request to be released from ICE custody. (*Id*.) On April 29, 2009, the BIA affirmed, without opinion, the IJ's decision. (Doc. 8-2, Ex. 12, BIA Decision of Apr. 29, 2009, 24.)

In a separate filing, Walton requested that his removal proceedings be reopened in order to request the removal of the conditions of his conditional lawful permanent

residency. (Doc. 8-2, Ex. 3, Interlocutory Ruling and Directive, 10-11.) On April 20, 2009, an IJ entered an interlocutory ruling that Walton was still entitled to apply for an INA section 216(c)(4) waiver for failing to have the conditions removed. (*Id*. at 10.) In order to do so, Walton had to file a Form I-751, Petition to Remove the Conditions on Residence.[1] (*Id*.) Further, this petition for a waiver must be filed with DHS's Regional Service Center, and original jurisdiction over the merits of the I-751 waiver lies with the United States Citizen and Immigration Service ("USCIS"). (*Id*. at 11.) Accordingly, the IJ provided Walton with "as much time as needed" to file the Form I-751 with the Regional Service Director. (*Id*.) The IJ also directed ICE to provide Walton with the necessary forms and instructions. (*Id*.) Further, the IJ directed the government to advise Walton how to proceed *in forma pauperis*, and noted that a master calendar date would be reset. (*Id*.)

---

[1] The IJ noted the following with respect to filing a Form I-751:

> In accordance with INA § 216(c)(4), [Walton] may apply for a waiver of the petition requirements. He may do this on one of three bases: demonstrating extreme hardship should he be removed - (c)(4)(A), or that the qualifying marriage was entered into in good faith by him, but that such marriage was terminated and that he was not at fault in failing to file the petition to remove the conditions - (c)(4)(B). The final option is that his marriage was entered into in good faith but that he was battered or subjected to extreme cruelty - (c)(4)(C).

(Doc. 8-2 at 11.)

Walton also filed an interlocutory appeal of the IJ's purported denial of his application for asylum. (Doc. 8-2, BIA Order dated May 26, 2009, 21.) The BIA dismissed this appeal and returned the record to the Immigration Court because it had determined that the IJ had not yet entered a final decision on the merits of Walton's application for asylum.[2] (*Id*.)

On May 18, 2009, Walton filed a bond appeal with the BIA, but on that same day filed a motion to withdraw that appeal. (Doc. 8-2, Ex. 11, Motion to Withdraw Bond Appeal, 22.) Further, on June 22, 2009, Walton filed in this court a supplemental document indicating that the USCIS has granted him a one year extension of his conditional residence status. (Doc. 7 at 6.) However, this document also indicates that the extension does not apply if Walton's conditional resident status has been terminated. (*Id*.)

Walton filed the instant petition on May 19, 2009. (Doc. 1.) On June 2, 2009, and order to show cause was issued, directing Respondent to respond to the petition. (Doc. 5.) Respondent filed a response on June 22, 2009. (Doc. 8.) Walton filed his traverse on July 23, 2009. (Doc. 13.) This matter is now ripe for disposition.

---

[2] The BIA noted that the IJ had entered an interlocutory ruling shortly after Walton filed the interlocutory appeal before it, but that ruling addressed Walton's conditional lawful permanent residence. (Doc. 8-2 at 21; *see also* Doc. 8-2 at 10-11.)

## II. Discussion

The apprehension and detention of aliens, pending removal decisions, are governed by § 236 of the INA, 8 U.S.C. § 1226, as amended. Pursuant to § 1226(a), the Attorney General may issue a warrant for arrest and detention, pending a decision on whether the alien is to be removed from the United States. Section 1226(a) permits discretionary release of aliens on bond or conditional parole, unlike mandatory detention under 8 U.S.C. § 1226(c). In this case, Walton is being detained pursuant to § 1226(a).

Walton is not challenging the denial of bond. Rather he argues that his removal is not reasonably foreseeable and that the government has failed to justify his continued detention resulting in a violation of his right to due process.[3] He further contends that his continued detention is unlawful because none of his convictions are "aggravated felonies that subjects him to 'mandatory detention,' as that term is defined at 8 U.S.C. § 1226(c)." (Doc. 1 at 2.) In support of these contentions, Walton relies mainly on *Zadvydas v. Davis*, 533 U.S. 678 (2001) and *Demore v. Kim*, 538 U.S. 510 (2003). However, these Supreme Court cases do not directly address Walton's circumstances.

---

[3] As of the date of this writing, Walton has been detained for nearly twelve months.

In *Zadvydas*, the Supreme Court considered a due process challenge to 8 U.S.C. § 1231, which governs detention of aliens following a final order of removal. Under § 1231(a), the Attorney General has ninety days to remove an alien from the United States after his order of removal, during which time detention is mandatory. The statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention." *Zadvydas*, 533 U.S. at 689. "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id*. at 699. To establish uniformity in the federal courts, a period of six months was recognized as a "presumptively reasonable period of detention." *Id*. at 701. If at the conclusion of the six month period the alien provides good reason to believe that there is no significant likelihood of deportation in the reasonably foreseeable future, the burden shifts to the government to "respond with evidence sufficient to rebut that showing." *Id*. Not every alien must be released after six months. An alien may still be detained beyond six months "until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id*.

9

*Zadvydas* is materially different from Walton's situation in two respects. First, unlike the petitioners in *Zadvydas*, Walton is not under a final order of removal. He is currently being held pending his removal proceedings. As the Supreme Court noted in *Demore*, detention pending removal "serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing their chance that, if ordered removed, the aliens will be successfully removed." *Demore*, 538 U.S. at 528. Second, in *Zadvydas* the Supreme Court analyzed § 1231, not § 1226(a). Walton is being held pursuant to a statute different from the one at issue in *Zadvydas*. In fact, contrary to Walton's assertions, he is being held under § 1226(a). Pursuant to that section, he has had a determination by an independent decision maker who determined him to be a danger to society and a flight risk. Further, the decision of the IJ was affirmed by the BIA.

In *Demore*, a lawful permanent resident filed a habeas petition challenging the no bail provision of § 1226(c). The Supreme Court held that mandatory detention pursuant to § 1226(c) during removal proceedings is constitutionally permissible. *Demore*, 538 U.S. at 531. However, the Supreme Court's decision, as noted in *Madrane v. Hogan*, 520 F. Supp. 2d 654 (M.D. Pa. 2007), is a "narrower holding grounded in repeated reference to the anticipated brevity that pre-final order removal

proceedings are expected to take in the ordinary course." *Id*. at 664. The Supreme Court noted that under § 1226(c) detention pending removal proceedings has a definite termination point, and in the majority of cases it lasts for less than ninety days. *Demore*, 538 U.S. at 529. This brief period of detention pending removal proceedings is what distinguishes *Demore* from *Zadvydas*, which, as noted above, involved a post final order with no obvious termination point. *See id*.

*Demore* is relevant in that it involved detention pending removal proceedings; however, the statute analyzed was § 1226(c), which requires the mandatory detention of certain criminal aliens. However, as stated above, Walton is being held under § 1226(a). Pursuant to that section, an independent decision maker determined that Walton was a danger to society and a flight risk, unlike the alien in *Demore*. That decision of the IJ in this case was affirmed by the BIA.

Respondent posits that Walton's detention is lawful because, pursuant to § 1226(a), an independent decision maker, the IJ, determined him to be a danger to society and a flight risk. Further, his detention is not indefinite; rather, Walton's removal proceedings have been delayed by his own numerous legal challenges. In support of its position, Respondent cites a Ninth Circuit Court of Appeals case, *Prieto-Romero v. Clark*, 534 F.3d 1053 (9th Cir. 2008).

11

In *Prieto-Romero*, the court analyzed the authority to detain an alien pursuant to § 1226(a). In upholding the petitioner's three year detention, the Ninth Circuit court determined that the Attorney General's detention authority under § 1226(a) was limited "to the period reasonably necessary to bring about an alien's removal from the United States even if continued detention in any particular litigant's case would not pose a constitutional problem." *Prieto-Romero*, 534 F.3d at 1063 (quotations omitted). The court found that the petitioner's detention was not indefinite, even though his removal had been delayed by numerous legal challenges, since "he is not stuck in a 'removable-but-unremovable limbo," as the petitioners in *Zadvydas* were." *Id*. (citations omitted). The petitioner had argued that his detention was indefinite since his ultimate deportation was unforeseeable. *Id*. However, the Ninth Circuit court found that his detention was not indefinite because he "remains *capable* of being removed - even if it has not yet finally been determined that he *should* be removed - and so the government retains an interest in 'assuring his presence at removal.'" *Id*. at 1065 (citations omitted) (emphasis in original).

Here, while the court acknowledges that Walton has been held for an extended period of time awaiting removal proceedings, he has failed to demonstrate that his detention is indefinite. His circumstances are not unlike those of the petitioner in

12

*Prieto-Romero*. Walton's removal proceedings are pending because he has filed two interlocutory appeals and an application for asylum over the course of the proceedings. As a result of the interlocutory appeal in which he requested the removal of the conditions of his conditional lawful permanent residency, the IJ permitted Walton an extension of time of "as much time as needed" in order to file the relevant Form I-751 with the Regional Service Director of the USCIS. (Doc. 8-2 at 11.) The IJ also ordered that Walton be given the proper forms with instructions and that the master calendar date be extended. (*Id*.) Walton did file the Form I-751, and USCIS granted a one year extension of his conditional resident status on or around May 11, 2009, but noted that extension is not applicable if Walton's conditional resident status has already been terminated. (Doc. 7 at 6.) Because Walton's resident status was terminated on February 14, 1991, the receipt issued by USCIS has no effect on his removal proceedings. Further, Walton filed an application for asylum, which will be adjudicated by an IJ. (*See* Doc. 1 at 5.) Thus, Walton "is not stuck in a 'removable-but-unremovable limbo,' as the petitioners in *Zadvydas* were." *Prieto-Romero*, 534 F.3d at 1063. To the contrary, the government appears ready and willing to remove Walton, but must wait for a final order of removal in order to do so legally. Further, while Walton's detention lacks a certain

end date, that end date remains reasonably foreseeable – the completion of removal proceedings. *See Zadvydas*, 533 U.S. at 699.

In sum, unlike the petitioners in *Zadvydas*, *Demore*, and *Madrane*, Walton is being held pursuant to § 1226(a). The IJ previously determined that he should be detained because he is a danger to society and a flight risk. The BIA affirmed the IJ's bond determination. Further, the government has a strong interest in assuring his presence at removal. As a result, the court finds that Walton has been afforded all the due process that is due him. Thus, the court will deny the petition.

An appropriate order will issue.

                                                      s/Sylvia H. Rambo
                                                      SYLVIA H. RAMBO
                                                      United States District Judge

Dated: August 17, 2009.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JUNIOR WALTON,** | : | **CIVIL NO. 1:CV-09-00936** |
| Petitioner | : | (Judge Rambo) |
| v. | : | |
| **MARY SABOL,** *et al.*, | : | |
| Respondents | : | |

# **O R D E R**

**AND NOW**, this 17th day of August, 2009, for the reasons set forth in the accompanying memorandum, **IT IS HEREBY ORDERED THAT:**

1) The petition for writ of habeas corpus (Doc. 1) is **DENIED**.

2) The Clerk of Court is directed to **CLOSE** this case.

                                   s/Sylvia H. Rambo
                                    SYLVIA H. RAMBO
                                    United States District Judge

Dated: August 17, 2009.